# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5806 | **DATE** | 1/30/2002 |
| **CASE TITLE** | U.S.A. ex rel: Obert-Hong vs. Advocate Health Care etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | FEB 01 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 02 JAN 31 PM 5:08 | date mailed notice |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. JOHN M. OBERT-HONG, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No. 99 C 5806 |
| ADVOCATE HEALTH CARE, an Illinois corporation, and SOUTH SUBURBAN HOSPITAL, an Illinois corporation and subsidiary of ADVOCATE, | ) ) ) ) ) ) ) | DOCKETED<br>FEB 1 2002 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John M. Obert-Hong (relator) filed this *qui tam* action on behalf of the government against Advocate Health Care (Advocate) and South Suburban Hospital (SSH). He alleges that defendants sought payment from the government in violation of the False Claims Act (FCA), 31 U.S.C. §§3729-3733. We previously dismissed this suit, without prejudice, for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). *See* United States *ex rel.* Obert-Hong v. Advocate Health Care, 2001 WL 303692 (N.D. Ill. March 28, 2001). Relator later filed an amended complaint, and defendants once again move to dismiss for failure to plead fraud with particularity, Rule 9(b), and for failure to state a claim, Rule 12(b)(6). For the following reasons, we dismiss the complaint.

## BACKGROUND

Obert-Hong is a physician and former Advocate employee. Advocate is a for-profit health care provider, including a network of affiliated doctors and hospitals. SSH is an

Advocate subsidiary. Defendants' participate in various federal healthcare programs, including Medicare, Medicaid and TriCare. For each federal patient treated, defendants submit claims to the relevant government agency for payment.

Relator claims that defendants illegally offered doctors special benefits to induce them to refer federal patients to its hospitals. Advocate allegedly paid commercially unreasonable amounts to acquire practices, signed doctors to contracts mandating that all their referrals be to SSH and paid them a percentage of fees collected for referred patients. These practices, Relator alleges, violate the Anti-Kickback Act, 42 U.S.C. §1320a-7b, and the Stark Act, 42 U.S.C. §1395nn, which regulate federal healthcare reimbursement programs. When submitting claims to the government, healthcare providers must certify that they have complied with all relevant regulations, including the Anti-Kickback and Stark laws. Relator maintains that because defendants violated those laws, submitting certificates that aver compliance constituted false claims.

Defendants move to dismiss, arguing that their compliance certifications were not false claims because the alleged practices are permissible under the Anti-Kickback and Stark laws. Further, they maintain that the complaint still does not plead fraud with particularity, as required by Rule 9(b), and reassert their position that Anti-Kickback and Stark violations cannot form the basis for an FCA claim.[1] The government, which declined to intervene in relator's suit, filed a brief *amicus curiae* on this last issue.

## DISCUSSION

When deciding a Rule 12(b)(6) motion, we must assume the truth of all well-pleaded

---

[1] Defendants raised this last argument in their original motion to dismiss, but we did not address it. The parties both rely on their previous briefs.

factual allegations, making all possible inferences in the Relator's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). We will dismiss a claim only if it appears "beyond doubt that the [relator] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In addition to the complaint, however, we also consider the contracts between defendants and the doctors identified as recipients of illegal inducements. "Documents referred to in, but not attached to, a [relator's] complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." Duferco Steel, Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997).

## I. The Statutory Frameworks

This case involves two substantive statutes, the Stark Act, 42 U.S.C. §1395nn, and Anti-Kickback Act, 42 U.S.C. §1320a-7b, both of which regulate referrals between doctors and hospitals who participate in federal health care programs. Each contains slightly different prohibitions and exceptions.

The Stark Act statute is designed to prevent abusive self-referrals. The operative provision prohibits doctors from referring patients to a hospital with which they have a financial relationship. 42 U.S.C. §1395nn(a)(1). Healthcare providers are prohibited from submitting claims to the federal government for services rendered to patients referred in violation of this statute. Among other penalties, Stark specifically prohibits the government from paying on such claims. 42 U.S.C. §1395(g)(1).

Congress broadly defined impermissible "financial relationships," 42 U.S.C. §1395nn(a)(2), but it also created several statutory exceptions and authorized additional

regulatory ones. 42 U.S.C. §1395nn(b)(4). Among the statutory exceptions are bona fide employment relationships, isolated transactions and certain productivity bonuses. 42 U.S.C. §§1395nn(e)(2), (e)(6) and (h)(4). Further, the Health Care Financing Authority (HCFA) has published regulations, effective January 4, 2002. *See* 66 Fed. Reg. 856, 859 (Jan. 4, 2001). One of these refines the definition of "referral" to exclude services "personally performed or provided by the referring physician." 66 Fed. Reg. 856, 956 (Jan. 4, 2001) (to be codified at 42 C.F.R. 411.351).

The Anti-Kickback Act focuses on the circumstances surrounding the referrals themselves. This statute prohibits payment or receipt of any remuneration to induce referrals. 42 U.S.C. §1320a-7b(b). Although remuneration is broadly defined, this statute too contains specific exceptions, including bona fide employment relationships. 42 U.S.C. §1320a-7b(b)(b).

## II. The Alleged Illegal Practices

Relator alleges multiple Advocate practices as illegal: (1) its acquisition of doctors' practices; (2) its requirement that member doctors refer patients to defendants' hospitals; (3) bonuses purportedly based on the volume of referrals; and (4) upcoding.

### A. Practice Acquisition

First, a hospital's acquisition of a medical practice can implicate the Anti-Kickback Act. *See* Office of Inspector General opinion letter (Dec. 22, 1992) (def.reply mem., exh. A). A hospital might, for instance, overpay for the practice to induce the doctor to make future referrals. Relator spends much of his brief arguing why the transactions in question do not qualify for any of the regulatory safe harbors. Defendants concede as much, but argue that these acquisitions do not violate the statute to start with. They correctly state that safe harbors

only become consequential if the conduct is otherwise proscribed. The Anti-Kickback Act does not prohibit hospitals from acquiring medical practices, nor does it preclude the seller-doctor from making future referrals to the buyer-hospital, provided there are no economic inducements for those referrals. To comply with the statute, the hospital must simply pay fair market value for the practice's assets.[2]

The complaint says little about the acquisition transactions. Rule 9(b) requires particularized allegations, "the who, what, when, where and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990). There are multiple reasons for these heightened pleading requirements, including:

> (1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) and to protect defendants from unfounded charges of fraud which may injure their reputations.

Fujisawa Pharmaceutical Co. v. Kapoor, 814 F. Supp. 720, 726 (N.D. Ill. 1993). Relator does not identify what assets were purchased, the amounts paid, or anything beyond conclusory allegations that they were not commercially reasonable. This is not sufficient to plead fraud. The complaint fails to provide defendants with notice of what was unreasonable about these acquisitions. Permitting relator to make bald allegations of unreasonableness, without any details demonstrating how or why, would defeat Rule 9(b)'s purposes. Relator does state that defendants provided these doctors with various perquisites, such as office space, malpractice insurance and equipment, and suggests that these are *per se* commercially unreasonable. Post-

---

[2] We note that fair market value here may differ from traditional economic valuation formulae. Normally, we would expect the acquisition price to account for potential revenues from future referrals. Because the Anti-Kickback Act prohibits any inducement for those referrals, however, they must be excluded from any calculation of fair value here. *See* 42 C.F.R. 1001.952(b) and (c). There is, nonetheless, some value that would be considered fair and would comply with the statute.

acquisition, these doctors were employees, and these perquisites are subject to the bona fide employee exception. 42 U.S.C. §1320a-7b(b)(b). We cannot presume them to be unreasonable; the complaint must particularly allege facts showing that they are.[3]

Second, a hospital's acquisition of a doctor's practice can implicate the Stark Act's prohibition of financial relationships between referring physicians and referee-hospitals. But the statute contains an exception for isolated transactions. 42 U.S.C. §1395nn(e)(6). Purchasing a doctor's practice outright would seem a quintessential example. Relator argues that Advocate's acquisitions should not qualify because of the alleged mandatory referral and volume-based payment provisions. We will address these arguments separately in our discussion of the employment contracts, but relator has alleged no facts suggesting why the acquisitions themselves should not qualify as isolated transactions.

### B. Mandatory Referrals

Many Advocate doctors signed employment contracts requiring that they refer their patients to Advocate hospitals. Relator contends that such provisions are, by definition, inducements. We disagree. The Stark and Anti-Kickback statutes are designed to remove economic incentives from medical referrals, not to regulate typical hospital-physician employment relationships. Both statutes explicitly include employee exceptions. *See* Anti-Kickback Act, 42 U.S.C. §1320-7b(b)(b); Stark Act, 42 U.S.C. §1395nn(e)(2). None of the Anti-Kickback cases on which relator relies involved employees. *See* United States v. Greber, 760 F.2d 68 (3d Cir. 1985); United States v. Bay State Ambulance and Hosp. Rental Service, 874

---

[3] Although we may infer that any excess paid over fair value is intended to induce referrals, United States v. Lipkis, 770 F.2d 1447 (9th Cir. 1985), the complaint does not allege any facts -- what assets were acquired, their purported value, or the amount actually paid -- from which we could draw such an inference.

F.2d 20 (1st Cir. 1989); Polk County v. Peters, 800 F.Supp. 1451 (E.D. Tex. 1992). In a non-employee context, any compensation could be considered an inducement. For employees, however, their compensation, unless directly related to referrals, is exempt. Turning to Stark, one of the statutory exceptions, the physician recruitment exception, 42 U.S.C. §§1395nn(e)(5)(A) and (B), does prohibit mandatory referrals. But defendants need not qualify for this exception. The only financial relationship between defendants and physicians falls within the bona fide employee exception, which contains no such requirement. There is nothing in either statute that prohibits hospitals from requiring that employee physicians refer patients to that hospital.[4] Provided that compensation arrangements are not contingent on the volume or value of referrals, there is no economic incentive for the doctor to refer patients to that hospital.

### C. Physician Compensation

Many of the statutory exceptions, including the employee exception, contain a restriction that compensation may not be dependent on the volume or value of referrals. Relator alleges that Advocate's arrangements with its doctors is value-based. After reviewing the contracts themselves, we disagree. The provisions in question state that the doctor shall receive a percentage of receipts for professional services. In some cases the percentage differs, depending on whether the services are provided in the hospital or the doctor's office. But both depend on the value of work performed by the individual doctor, not the value of any referrals.

---

[4] The new Stark regulations explicitly recognize that mandatory referral provisions are permissible. 66 Fed. Reg. 856, 877 (Jan. 4, 2001). But even before their promulgation, there is nothing in the statutory text that would have prohibited it.

The parties dispute the definition of "referral." The new Stark regulations, 42 CFR §411.351, make clear that personally performed services are not referrals. Regardless, the statutory definition necessarily excluded personally performed services. A referral is "the request by a physician for the item or service, including the request by a physician for a consultation with another physician (and any test or procedure ordered by, or to be performed by (or under the supervision of) that other physician),". 42 U.S.C. §1395nn(h)(5). If the physician personally performs the services, without requesting anything from or consulting with another physician, there is no referral.

Because the percentage compensation is based on personally performed services, not referrals, there is no economic inducement to refer patients. Stark's employee exception specifically permits productivity bonuses for services personally performed by the doctor. 42 U.S.C. §1395nn(e)(2). All compensation paid to these doctors falls within Anti-Kickback's employee exception.[5] The fact that the contract does not set a specific amount in advance is not dispositive. It fixes a formula, and is independent of any referrals. That is all that these statutes require. The fact that some doctor's compensation was entirely based on a percentage of receipts, as opposed to base salary plus bonus, is also immaterial. Payments based on personally performed services are permissible.

D. Upcoding

Lastly, relator alleges that defendants engaged in upcoding. This practice essentially means mislabeling diagnoses or treatments on claim forms to increase the reported value of the claim. Relator cites a single example where a review board reduced the coding of a claim.

---

[5]Once again, the case relied upon by Relator did not involve an employment relationship. *See* Zimmer, Inc. v. Nu Tech Med., Inc., 54 F.Supp.2d 850 (N.D. Ind. 1999).

There is nothing in the complaint to suggest a pattern of upcoding, or even that this single incident was intentional. This is far short of what is necessary to sustain a fraud claim.

### III. Stark and Anti-Kickback Violations as Bases for FCA Claims

Courts have disagreed as to whether and under what circumstances falsely certifying compliance with the Stark and Anti-Kickback Acts can give rise to an FCA claim. Because we find Advocate's practices did not violate those statutes – its certifications were not false -- we need not reach that question.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

*JAMES B. MORAN*
Senior Judge, U. S. District Court

Jan. 30, 2002.